51 CCPA

**Application of William V. WHITE, Matthew Hamell and Jacob R. Feldman,**

**Patent Appeal No. 7150.**

United States Court of Customs
and Patent Appeals.
March 12, 1964.

————◆————

Cameron, Kerkam & Sutton, William B. Kerkam, Jr., Washington, D. C., for appellants.

Clarence W. Moore, Washington, D. C. (Jere W. Sears, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

ALMOND, Judge.

William V. White et al. appeal from a decision of the Board of Appeals affirming the examiner's rejection of all of the claims in appellants' application[1] for food product and process. Claims 1, 2, 6, 11, 12, 13, 15 and 18 are directed to a process of obtaining a fortified coffee aroma composition and were rejected as unpatentable over the prior art.

Claim 1 is illustrative:

"A process of obtaining a fortified coffee aroma composition useful in the aromatization of foodstuffs which comprises subjecting roasted coffee having a moisture content not greater than 7% to a dry distillation at mild temperatures and substantially reduced subatmospheric pressures to cause removal of desirable volatile coffee constituents therefrom, and incorporating said volatile coffee constituents into oil which has been separated from roasted coffee to thereby balance and stabilize the aromatic constituents therein."

The claimed invention, in essence, comprises dry distillation of roasted coffee to remove therefrom volatile coffee constituents and to incorporate same into oil separated from roasted coffee. The oil is said to stabilize the aromatic constituents of the dry distillation condensate and to produce a balanced aroma.

The references relied on are:

| Hamor et al. | 1,292,458 | Jan. | 28, 1919 |
| Kellogg | 1,605,115 | Nov. | 2, 1926 |
| Lemonnier | 2,680,687 | June | 8, 1954 |

Hamor et al. state that in the prior art "many attempts have been made to prepare water-soluble coffee-extracts in solid form, but in many of the processes proposed the aromas are lost by reason of being driven off in the process of evaporating the water solution or extract of the coffee to secure the soluble extract." Citing various methods to preserve aromas, the patentee refers to proposals to "recover the volatile oils or aromatic substances by means of steam distillation" and the absorption of the oils 'in an absorbent or carrying medium which is combined and retained with the extract and becomes part of the coffee decoction prepared from the extract." It is stated that these prior art processes were not successful in that they did not "make possible practical duplication of

1. Serial No. 684,654 filed Sept. 18, 1957.

the decoction made directly from roasted ground coffee-berries."

Hamor et al. modified this process by employing an "enfleurage step," that is, "passing the caffeol[2] or aromas of the coffee * * * into contact with a suitable caffeol absorbent. * * * The absorbent may be some solid or liquid oil, hydrocarbon complex, fat or wax, or derivative, for instance, glycerol, which is a derivative. * * * A great variety of oils, vaseline-like products, fats and waxes are known to be capable of absorbing fugacious aromas of the type of caffeol, so it is impractical to enumerate all such absorbents." It is disclosed that the caffeol is reclaimed from the absorbent with the use of a suitable caffeol solvent and separated from the solution "by any known way before or after addition to the previously prepared solid or pulverulent coffee-extract." Preference is stated to add the solution to the extract "and evaporate the solvent under proper conditions of temperature and pressure to effect its removal and the retention of the aroma by the extract."

Kellogg states that "oil will retain volatile essences upon which flavor is dependent much longer than any other medium, as for instance, spirits or water." The patentee expressed oil from roasted coffee beans at relatively low temperature. The oil "may be used to flavor coffee essence or extract." The reference discloses that:

> " * * * The flavor in the form of volatile essences is carried by the expressed oil, caffeol or caffeone, and since there is no admixture of foreign matter, and the oil is in its natural state, as well as the essences, they are retained by the oil and the product does not readily deteriorate."

Lemonnier discloses a process of preparing an aromatized soluble coffee powder by subjecting ground roasted coffee containing less than 2% moisture to a temperature within the range of 25–80° C. at an absolute pressure of less than 20 mm., to distill off an aromatic fraction, condensing the distillate and then incorporating the condensate in a soluble coffee powder.

The examiner rejected the claims as unpatentable over Lemonnier in view of Kellogg and Hamor et al., pointing out that the claims differ from the teaching of Lemonnier "only in the further step of incorporating the volatile coffee constituents into a coffee oil such as shown by Kellogg." The examiner reasoned that inasmuch as Kellogg taught the use of coffee oil as a flavoring agent for coffee extracts; that both Kellogg and Hamor et al. show that oils are absorbents for volatile constituents and Hamor et al. disclose the association of charged absorbents with coffee extracts, "invention is not seen in merely incorporating the aromatic fraction of Lemonnier in coffee oil." It was considered that such was "no more than the application of the teachings of the art."

The board stated, correctly we think, that the principal question was whether it would occur to one skilled in the art "that the coffee oil of Kellogg could be used to stabilize or preserve the aromatic coffee ingredients of Lemonnier while contributing its own aromatic content." The board pointed out that the process of dry distillation of roasted coffee for recovery of aromatic constituents, as recited in the claims, was acknowledged to be shown by Lemonnier and that the patent also "discloses use of the aromatic ingredients in coffee powder to provide a soluble coffee having a 'truly characteristic aroma and flavor.' " It further noted the similar use by Kellogg of pressed coffee oil "taking advantage of (1) the coffee flavor provided by the volatile essence and (2) the stabilizing function of the oil."

The board acknowledged its awareness of the fact, as pointed out by appellants, that among the oils disclosed by Hamor et al. there was no mention of coffee oil

---

2. Patentee uses the term "caffeol" substantially "as a synonym for the volatile aromatic and flavoring constituents, oils, and essential oils, etc. of roasted coffee."

but, it noted, that Kellogg recognized the value of coffee oil in the retention of flavor. The board noted the absence of disclosures in Kellogg of the "overt addition of volatile aromatics to supplement or fortify those contained by the oil in its natural state." The board stated:

" * * * However, Hamor et al. clearly disclose the old enfleurage process of using oil to absorb and retain volatile, fugacious, aromatic and flavoring substances, particularly those driven from coffee. In reference to the prior art the patent further, and significantly, states:

" 'It has also been proposed to absorb these volatile oils in an absorbent * * * medium which is combined and retained with the extract and becomes part of the coffee decoction prepared from the extract.'

"The use of oil for this purpose is an old perfume manufacturing expedient as is also noted by Kellogg. Since it is understood in this art that oils in general will absorb and retain coffee aromas and that coffee oil in particular will retain coffee aromas, we must agree with the conclusion of the Examiner that it could not be considered unobvious to merely incorporate the aromatic fraction of Lemonnier in coffee oil to augment, fortify or balance the natural coffee flavor of the oil. Moreover, retention of the aromatic constituents by the oil is not a new and unexpected result as urged by appellants but rather the clear teaching of the art."

Appellant contends that the cited references have been misconstrued by the examiner and the board. While admitting Kellogg teaches that coffee oil will retain volatiles, the retention is only of those originally present in the oil as expressed or in its "natural state" thus showing no teaching that the oil would retain the volatiles of an added dry distillation condensate nor serve the function of the oil in the present invention which not only serves to aromatize and add flavor to the soluble coffee product but, as alleged in appellants' specification, the function of the oil is also one of "repressing and modifying the various aromas 'foreign' to coffee."

Appellant further contends that Hamor et al. do not teach the use of coffee oil as a good absorbent, pointing out that the claimed invention involves more than mere use of coffee oil as a vehicle to facilitate collection of volatiles in that it also includes balancing and stabilizing the aroma and the combination of the oil and the dry distillate to improve the aroma and flavor of soluble coffee. It is asserted that Hamor et al., in contrast, teaches the need to separate the volatiles prior to their incorporation alone into soluble coffee.

Appellants' contention, in essence, is that without the use of appellants' disclosure, it would not be obvious to one skilled in the art to substitute coffee oil as disclosed by Kellogg for the oils and other absorbents of Hamor et al., and in addition substitute the dry distillation condensate of Lemonnier for the caffeol of Hamor et al. to obtain a new and unexpected result.

It seems to us that appellants direct the thrust of their argument against the specific teachings of each reference separately rather than on a combination of the prior art references.

Appellants' brief description of the claimed invention is that it "involves the stabilization of a desired aroma fraction by incorporating it into a coffee oil. The desired aroma fraction employed is obtained by a process such as described by" Lemonnier. As noted by the examiner, the claims differ from the teaching of Lemonnier only in the further step of incorporating the volatile coffee constituents into a coffee oil such as shown by Kellogg.

As we have noted in our analysis of Kellogg, it is stated "that oil will retain the volatile essences upon which flavor is dependent much longer than any other medium," and that when caffeol "is ex-

tracted from the coffee, in its natural state, it carries a large amount of the flavor, and retains it with but little loss for long periods." In addition, Hamor et al. teaches that oils in general will absorb volatile caffeol essences. It would seem an obvious suggestion to one skilled in the art desiring to improve the stability of Lemonnier's product to mix his condensate with oil, as a superior retention medium for the volatile constituents. It seems clear that oil expressed from roasted coffee beans carries many of the desirable constituents and there is nothing to suggest that it could not absorb more and serve as a useful carrying medium.

Appellants assert that the claimed process "stabilizes the dry distillation condensate so that it may be held at room temperature for much longer periods of time prior to use in soluble coffee powder," while, in contrast, the dry distillation condensate of Lemonnier, by itself, "when held at room temperature, loses its desirable coffee character, becomes stale, turns green and develops a strong rancid odor."

While it is true that Lemonnier did acknowledge spoilage for fractionally condensed distillate, Lemonnier clearly indicates, however, that it is preferred to effect the condensation at 180° C. "since it has been found that this provides best results as far as the character and stability" of the distillate is concerned and "with fractional condensation of the aroma there is a separation of certain unstable aromatic principles from certain naturally present stabilizers which cannot occur when the condensation is effected in one step using –180° C." It would seem, therefore, that no substantial basis exists for the comparative advantage asserted by appellants.

We take cognizance of appellants' contention that their coffee oil holds an advantage since it "represses the harsh or acidic character of the condensate"; that it "modifies the 'green' aroma notes * * * so that they are more favorably proportioned," and provides "higher boiling aromatic constituents" containing the desirable character.

This bare assertion absent a modicum of proof of record is not persuasive. The record discloses no comparative tests relating to the aroma or taste of the substance made from appellants' product as compared to those of the references.

We are familiar with the principles enunciated by the cases cited by appellants. It may well be that the art with which we are here concerned is crowded and simple and the alleged advance therein small, but we cannot conclude from the record before us that appellants' claimed process would not be obvious to one skilled in the art of coffee aromas with the references before him immediately prior to appellants' disclosure.

We find no reversible error in the conclusion reached by the board that it would not be unobvious to one skilled in this art to "merely incorporate the aromatic fraction of Lemonnier in coffee oil to augment, fortify or balance the natural coffee flavor of the oil and that the retention of the oil is taught by the prior art."

The decision of the board is affirmed.

Affirmed.

SMITH, J., concurs in the result.